King, J.
This is an action brought in this court to reverse the judgment of the court of common pleas of this county in an action brought in that court by the plaintiff in error to recover a judgment for an injury done to Dominick Foy, Jr., by defendant in error.
It is claimed by plaintiff in error that this judgment should be set aside, and for three reasons :
First. — That the court erred in submitting to the jury, to be taken by them in their retirement, the written instructions requested by the parties in the case, which were requests made at the close of the evidence and before the argument, the charge not having been delivered in writing, and which the jury did not have with them.
Second. — That the court erred in excluding certain testimony in the deposition of a witness, and
Third. — That the verdict of the jury is not sustained by the evidence.
The first question arises upon these requests. The plaintiff below, at the close of the evidence, requested the court to give the jury a certain written instruction, and the defendant at the same time requested the court to give a number of written instructions, some of which the court gave, and some it refused ; and these written instructions which were given, the court allowed the jury to take with them in their retirement. It is cláimed that the court ought not to have allowed that; that the proper construction of the statute relating to that matter does not warrant the court in sending to the jury a part of the charge, whether the charge be its own main charge, of the written instructions requested by the parties.
The statute in force when this case was tried, and which is now in force, is section 5190, and provides :
“5. When the evidence is concluded, either party may present written instructions to the court on matters of law, and request the same to be given to the jury, which instructions *153 shall be given or refused by the court before the argument to the jury is commenced.”
That statute was passed in 1892, and repealed the statute then in force, which had been on the statute books for some years, the fifth paragraph of which read :
“ When the evidence is concluded, either party may request instructions to the jury on matters of law, which shall be given or refused by the court.”
The fifth paragraph was the one that was amended in 1892, to the effect that the instructions should be written instructions. Previous to 1892 these might have been oral. The amendment provided further, that the instructions should be given or refused by the court before the argument to the jury is commenced, which is also an addition to the previous section.
Paragraph 7 of this amended statute is the same as in the previous statute, and reads :
“The court, after the argument is concluded, shall, before proceeding with other business, charge the jury ; any charge shall be reduced to writing by the court if either party, before the argument to the jury is commenced, request it; a charge or instruction, when so written or given, shall not be orally qualified, modified, or in any manner explained to the jury by the court; and all written charges and instructions shall be taken by the jurors in their retirement, and returned with their verdict into court, and shall remain on tile with the papers of the oase.”
The lack of time will prevent me from extending my argument in relation to the construction which, we think, should be placed upon this statute; but the construction which it is entitled to receive is that either party may present to the court written instructions, and request that they may’be given to the jury, after the evidence is closed and before the argument begins, in which case the court shall give or refuse thun': without any oral qualification, modification or explanaron, *154 and these are the instructions the parties may request to be given after the evidence is closed and before the argument as their instructions to the jury, and they become a part of the instructions of the court to the jury when so requested and so given. At the same time the parties, or either of them, may-request the court to give its charge to the jury in writing; and in that case the court shall reduce its charge and give it without any oral explanation or modification, the same as the instructions that have been requested. If that request to charge the jury in writing be omitted by the parties, the court can then charge the jury orally, and of course there is no writing or written charge to be submitted to the jury in their retirement; but the “written instructions” still remain that were given at the close of the evidence and before the argument, and it is the intention of this statute that the court should allow the jury to take those in their retirement. The idea is, the requests being in writing, and having been delivered before the case was argued to the jury, that these shall go to the jury, so that they may know what the instructions were, and we do not find that the action of the court was erroneous.
In this case the plaintiff took the deposition of a witness, and offered and read this deposition in making out his case, except that he did not read to the jury questions and answers Nos. 41, 42 and 43, in the examination in chief; but, in rebuttal, offered them as rebutting evidence, and the objection was sustained.
These questions and the answers, were as follows:
“41. Q. After the boy had run on the track, what opportunity was there tor the car to be checked, or the boy to be saved, if you observed any? A. Well, if he had slacked a little on the track, the boy would have got out of the way.
“42. Q. Could he have reached the boy? A. The man that stood on the left could have reached him and caught him, I thought; I thought that if I had stood where the man did, on the left there, I might have caught the boy.
“43. Q. And saved him ? A. Yes, sir.”
*155 Now, it is pretty clear to us that this was not evidence iu rebuttal. It was a part of the case which the plaintiff was called upon to make out — the negligence of the company, or its agents or servants, in either not stopping the car, or in not using those means which were at hand to save the boy from being run over. It should have been offered then, and it could only be admitted afterwards at the discretion of the court. And it also occurs to us that it would not be competent evidence in chief. This witness was a passenger conductor on the Lake Shore Railroad, and riding in the street car as a passenger. There is no evidence that he knew anything about an electric car, yet he is asked to state whether or not, after the boy had run on the track, there was an opportunity for the car to be checked before the boy was reached by it; and it is not shown that he had any means of knowing about that. Then he is asked to state whether the boy could have been saved or not, which certainly was the question which the jury was trying and would have to determine by their verdict from the facts, and not from the opinion of a witness as to whether the boy could have been saved. Of course, it would have been competent to give an opinion as to within what distance a car like that could have been stopped •; but this witness did not have that knowledge, and therefore, it seems to us, that question was incompetent, and as to whether the boy could have been saved or not, that was to be determined by the jury from the facts and circumstances and the appliances at hand for saving him.
Now, is this verdict sustained by sufficient evidence? It is contended here that the plaintiff below is entitled to recover under the principle of law which has been determined by the courts of this state and of others; that the more proximate cause of the injury in this case, was the omission of the defendant, after being warned of the danger to the plaintiff, to use a proper degree of care to avoid injuring him. This rule is stated in 49th Ohio St. 230, and in other cases. Cases involving substantially the facts contained in this one, have *156 been repeatedly before the courts of other states, two or three of which I will refer to on this point. It was held in the case of Sheets v. Conolly Street Railway, found in 24 Atlantic Reporter, 483, and decided by the Supreme Court of New Jersey, that it was negligence as a matter of law, for an intelligent child ten years old, to cross a track in front of a moving street ear, while looking in an opposite direction. And in Pennsylvania, in the 25th Atlantic Reporter, 606, is a case where the gripman saw a boy five and a half years old in the street, by tie side of the track, or between the track and the gutter, saw him pick up a stone and go towards the sidewalk, and throw it at a companion boy, and at the same time that he saw the boy do this, he turned on the power and started his car forward, at full speed. The boy, after throwing the stone, wheeled and ran kind of cross-wise on the track, and was struck by the car, and run over. It was held that the company was guilty of no negligence. In Durman v. Broadway Ry. Co., 22 North-Western Reporter, 162, a verdict for the plaintiff was reversed and a new trial granted because, as the court say, defendant was not guilty of negligence where a boy ten years of age ran in front of the horses attached to a car, and was two feet in front of the horses when first seen, and the car was going six miles an hour and could be stopped within sixteen or eighteen feet, and yet was not stopped, but ran over the boy. In 126 N. Y. 645, a boy of ten years was killed by falling upon the track about eight feet in front of the horses, and being run over. The court say in that case, that street cars have preference in the street, and while the ears must be managed with ordinary care to avoid injuring people who are upon the street, yet passengers must use reasonable care to keep out of their way. The rule of care as prescribed for boys or children of tender years, is stated and settled in this state in the 46 Ohio St. 283 to 290, where the court sáy it is the duty of children to observe ordinary care, which, for them, is that degree of care which children of the *157 same age, of ordinary care and prudence, are accustomed to exercise under similar circumstances.
Now, applying these rules in the consideration of this case, is this verdict against the weight of evidence?
The plaintiff was ten years and two months of age when he was injured. He was playing in the street with his companion boys and girls, in front of his own home, and where they had resided for at least a year, along which street the track of the defendant company was laid. He had been accustomed to street cars ever since he was able to be about, and knew that these cars passed his house along this street many times every day, as is shown by the evidence. He was playing daily in front of this house. It seems that they were playing a game called “ Nigger baby that there was a hole in the ground, into which the ball would roll, and if it went into the hole in front of one boy, that boy took up the ball and threw it to see if he could hit some other boy, in which case the other boy took the ball and continued to play in that manner; and, about the time this street car came along, some boy, whose name I do not remember, picked up the ball just as the car came along, and threw it towards the boy who was injured, and he turned around and ran, heedlessly and without looking, as it is testified, without noticing the car, or hearing the car or the bell, whether it was rung or not, yet several witnesses testified that it was; but he ran right out on the track in front of the moving car. Now, was the motorman of that car guilty of negligence in not presuming the intentions of the boy in reference to running on this track, and in not stopping the car in time to prevent the inj ury ? The evidence of the sole passenger on this car would seem to indicate that there was plenty of time to have stopped the car before the injury occurred ; and yet the testimony of that witness does not seem to bear upon its face quite as much indication that he was trying to tell all the truth as I would like in a case of that kind. In his testimony he says:
*158 “ Q. How fast was you going at that time? A. We were running fifteen miles an hour when I noticed so many of them there.”
The testimony shows that this car stopped at a switch— being a single track railroad with turn-outs; at the corner of the block, where it met and passed a car and had pulled out of the swtich onto the single track and ran a distance of perhaps three hundred feet to the place where the boy was injured; and the witness swears it was running fifteen miles an hour when he noticed the children.
“ Q. After you observed the children, was there any change in the speed ? A. When he got towards the children he wound up the brake a little, and slackened down maybe to nine or ten miles an hour.
“Q. Then what happened? A. They kind of scattered off the track, some of them, and this boy — I was watching to see if they did not, some of them, come on again — this boy started to go across the track.
“ Q. What was he doing ? A. Playing with the rest of them.
“ Q. Did you see the ball in the air? A. No, sir.
“ Q. Going across the track, was he going backwards or forwards ? A. He was running forward, and he kind of looked around at the car.”
The boy does not testify that he looked at the car at all, or had any intimation that the car was near him.
“ Q. How close were you to him then ? A. Ten or twelve feet.
■“ Q. What did the motorman do ? A. He didn’t do anything until we ran over the boy, and then he slacked on the brake, and stopped.
“ Q. How far did you run after you ran over him? A. Forty or fifty feet, maybe sixty feet; there is where we picked up the boy.
“ Q. Prior to the time you ran over the boy, did he ring the bell, or not ? A. He did not at all; I did not hear.
Now, the testimony of the motorman, and of the conductor, and of a man who was a carpenter at that time, acting as a car *159 repairer, and who soon after went to work for the Lozier Bicycle manufactory, and who seemed to be a very intelligent witness, who stood with the motorman on the front platform, all show that this car did not run at any time on leaving the switch, and before they struck this boy, at a speed to exceed eight miles an hour. That when they approached to within a hundred feet of where the boys were playing, two little girls started apparently to run across the track; that the motorman turned off the electricity, turned the brake and rang the gong, and the girls heard it and looked up and turned back upon the left side of the street about a hundred feet from where these boys were playing with their ball; that he then turned on the current and increased the speed and proceeded, but had no idea that this boy was going upon the track who was about five feet from the rails of the track, and was with the other boys in the street. The car proceeded until they reached the point near where the boys were, and one boy started to throw the ball, and this boy turned and ran upon the track instantly. As soon as he stepped upon the track the motorman turned off the current of electricity and turned the brake with all his force, and rang the gong, as all three of these witnesses say, and almost at that instant the boy was struck and injured. He had nearly passed over the track. It is the testimony of this carpenter that he was watching and saw the whole occurrence, and saw it very plainly and distinctly, and he swears that the motorman did everything in the way of putting on the brake and turning off the electricity that could have been done to stop the car; and that was testified to by the motorman, and they are corroborated by the conductor, to some extent, although he didn’t see all of it.
Under that state of facts, can it be said that the agents of this company were so negligent as to make the company liable, or rather, should the verdict of the jury, finding that they were not guilty of negligence, or in effect finding that, be reversed, and the case sent back for a new trial? We *160 do not feel that we would be justified in disturbing the verdict under such testimony. It rather seems to us that the weight of the evidence, which the jury evidently believed, and which they were entitled to believe, would clearly and fairly exonerate the motorman and the company from any negligence; that it was one of those things which he could not possibly have avoided; that he could not have anticipated that this boy, at that precise moment, would come upon the track in front of the car, and it is not at all clear that the boy, who was an intelligent lad, could not fairly be held to have been guilty of contributory negligence in heedlessly running upon the track in front of this car.
Frank Hurd, for plaintiff in error.
Barton Smith, for defendant in error.
We therefore affirm the judgment.